IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 21, 2001

## STATE OF TENNESSEE v. SCOTT RAY ANDERSON

**Direct Appeal from the Circuit Court for Blount County**
**Nos. C-11636, 37, 38    D. Kelly Thomas, Jr., Judge**

---

**No. E2000-03040-CCA-R3-CD**
**September 19, 2001**

---

The defendant appeals the judgment entered by the Circuit Court of Blount County revoking his community corrections sentence. The sole issue on appeal is whether the court abused its discretion in ordering the defendant to serve the remainder of his sentence in the penitentiary. After careful review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); Raymond Mack Garner, District Public Defender; and Shawn G. Graham, Assistant District Public Defender (at trial), for the appellant, Scott Ray Anderson.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Michael L. Flynn, District Attorney General; and William R. Reed, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### DISCUSSION

The defendant, Scott Ray Anderson, pled guilty to three charges of theft of property over $1000, a Class D felony. On September 27, 1999, the trial court imposed an effective sentence of ten years, with 168 days to be served in local confinement and the balance in community corrections. After an eligibility report was filed with the court, the defendant was released periodically under the supervision of the Community Corrections Program to attend scheduled Alcoholics Anonymous meetings and anger management classes. The defendant was released from jail on April 25, 2000, and was then placed in the ETHRA Community Corrections Program to serve the remainder of his sentence.

On August 15, 2000, the trial court entered an order of incarceration ordering the defendant to serve six weekends in jail as a result of three unexcused absences from his day treatment program.[1] In the revocation warrant filed on October 6, 2000, the State alleged that the defendant had violated the terms of his community corrections sentence by: (1) being arrested for aggravated assault on August 6, 2000; (2) failing to complete the six weekends in jail as ordered by the trial court on August 15, 2000; (3) failing to maintain employment; (4) failing to pay court costs; (5) failing to pay any supervision fees; and (6) failing to report to scheduled group meetings since September 26, 2000. The defendant was arrested, and a hearing was held on November 27, 2000, to determine whether his community corrections sentence should be revoked.

Pat Ballard, the defendant's community corrections supervisor, testified that the defendant had been under her supervision while in jail on furloughs and for four months after his release from jail on April 25, 2000. She indicated that the defendant had initially made significant progress in the program, but she began seeing a change in late July. By late September, he had stopped coming to his group meetings, and the last time he had reported to her was on September 26, 2000. The defendant failed to provide her with any employment records after July 22, and had not paid any court costs or supervision fees. Furthermore, she stated that, because of his new arrest for aggravated assault on August 6, 2000, he had been ordered to serve six weekends in jail. She could not recall how many weekends the defendant had actually served but stated that he had not served all of them. She told the court that the defendant's "relapse" was the result of his addiction to "huffing" paint and his lack of focus on sobriety. She believed, however, that he was still a good candidate for rehabilitation and recommended that he be placed in a different treatment program while incarcerated for six months and then be placed in a structured halfway house.

The defendant also testified on his behalf at the revocation hearing. He admitted that Ms. Ballard's allegations were truthful, that he had been on probation several times in the past, and that his prior probation had been revoked for failure to attend his treatment meetings. He admitted having a substance abuse problem and claimed that he needed "more structured help." However, he recognized that his prior attempts at rehabilitation had failed. When testifying as to the charges brought against him for aggravated assault, he explained that because the charges had been dismissed, he had assumed that he did not have to report to jail after his third weekend. He could not explain why he had stopped going to his counseling meetings, other than to say that he had started "huffing" paint again and could not control his addiction. As for not paying his fees and costs, the defendant said that he had fallen behind on paying his debts while he was incarcerated and, later, after he was working, he returned to using addictive substances "and just never paid."

At the conclusion of the hearing, the trial court revoked the defendant's conditional sentence, finding that his violations were significant. The court also found that the defendant had "dropped

---

[1]The order of incarceration states that the defendant was sentenced to six weekends in jail as a result of his unscheduled absences. However, we note that, at the revocation hearing, both the defendant and his community corrections supervisor testified that the six-weekend jail sentence was the result of his arrest for aggravated assault on August 6, 2000.

out and relapsed and use[d] controlled – illegal substances while on Community Corrections." The court stated: "There just comes a point when too much is too much. And there's a good argument today that that point came a long time ago, but it has definitively come now, if it hadn't come a long time ago." The court then ordered the defendant to serve his original jail sentence in confinement less time already served.

## ANALYSIS

The defendant argues that the trial court abused its discretion in revoking his community corrections sentence. He further contends that the court erred in not following the recommendations of his community corrections supervisor, given Ms. Ballard's experience and confidence in his chances for success. In light of the evidence presented, we find this argument without merit.

The primary purpose of the Community Corrections Act of 1985 is to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" Tenn. Code Ann. § 40-36-103(1) (1997). The program offers a flexible alternative beneficial to both the defendant and society. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990).

Once the defendant violates the terms of his community corrections sentence, the trial court may revoke the sentence and impose a new one. Tennessee Code Annotated Section 40-36-106(e)(4) grants the trial court the authority to resentence a defendant following the revocation of the original sentence. The court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." Tenn. Code Ann. § 40-36-106(e)(4) (Supp. 2000).

Revocation of a community corrections sentence occurs upon finding by a preponderance of the evidence that the defendant has violated the conditions of the agreement. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). "The judgment of a trial court in this regard will not be disturbed on appeal unless it appears that there has been an abuse of discretion." Id. For a reviewing court to find an abuse of discretion, it must be shown that the record contains no substantial evidence to support the trial judge's conclusion. Id.

As the record clearly shows, the defendant had been before the trial court on many occasions since his substance abuse and other problems began at age fifteen. The judge himself recalled ordering sentences more lenient than what the State had recommended when the defendant had appeared before him. On cross-examination, the defendant acknowledged that he had spent most of his adult life in custody. He also admitted that previous probations had been revoked for failure to comply with the terms of his sentences. While acknowledging that he had an uncontrollable drug addiction and needed help, the defendant admitted to not following his treatment plans. Perhaps, the most significant testimony in this regard came from the defendant's community corrections

supervisor who testified that he had made progress in the program at first but then lost his focus on sobriety and stopped attending his scheduled meetings.

The evidence presented and the defendant's own admissions demonstrate his constant disregard for the leniency of the court. The record firmly supports the court's determination that the defendant failed to comply with the terms of his community corrections sentence.

### CONCLUSION

We conclude that the court did not abuse its discretion in revoking the defendant's community corrections placement and ordering him to serve the remainder of his sentence in confinement. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE